## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | | |
|---|---|---|
| **IVORY BELL, DERRICK LOVE,** | ) | |
| **SHAUN BOWDEN, and CHRISTIAN** | ) | |
| **MCCLATCHER,** | ) | **Case No.** |
| | ) | |
| **Plaintiffs,** | ) | **Judge** |
| | ) | **Magistrate Judge** |
| **v.** | ) | |
| | ) | **Jury Demand** |
| **PPOC, LLC, d/b/a PRIME AUTO USA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

For their Complaint against Defendant PPOC, LLC, d/b/a Prime Auto USA ("Defendant"), Plaintiffs Ivory Bell, Derrick Love, Shaun Bowden, and Christian McClatcher ("Plaintiffs") state:

## PARTIES

1.    Plaintiffs are each former employees of Defendant.

2.    Defendant PPOC, LLC, d/b/a Prime Auto USA, is a Delaware limited liability company with its principal place of business at 1377 U.S. Highway 45 Bypass, Jackson, Madison County, Tennessee 38305-2711.  Defendant may be served with process through its registered agent, Capitol Corporate Services, Inc., 992 Davidson Drive, Suite B, Nashville, Tennessee 37205-1051.

3.    Defendant operates for-profit, franchised automobile dealerships within the Western District of Tennessee.  At all relevant times, Defendant employed more than 15 individuals, including Plaintiffs.

**JURISDICTION AND VENUE**

4.    This is an action for damages and equitable relief for unlawful employment practices.  Plaintiffs bring their claims under 42 U.S.C. § 1981 ("Section 1981") and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq*. ("THRA").  Plaintiff Ivory Bell also timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  Once she obtains a notice of suit rights from the EEOC, she will timely seek to amend this Complaint to include claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII").  The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a).  Venue is proper under 28 U.S.C. § 1391.

**FACTS**

5.    Plaintiffs are African American individuals who were employed by Defendant as salespersons at its automobile dealership in Jackson, Tennessee.

6.    Plaintiffs performed their jobs for Defendant in an excellent manner.

7.    During Plaintiffs' employment, Defendant discriminated against them because of their race in the terms, conditions, and privileges of employment, including paying Plaintiffs less than similarly situated, non-African American employees; not paying Plaintiffs commissions and bonuses they had earned; changing, inflating, and overstating the dollar amount that Defendant had paid for vehicles on purchase and costs sheets for Plaintiffs and African American salespersons, thereby reducing their compensation, but not doing so for non-African American salespersons; providing Plaintiffs less valuable benefits than similarly situated, non-African American employees; impairing Plaintiffs' ability to make sales while allowing and enabling non-African American salespersons to do so; not promoting Plaintiffs to sales manager and other managerial positions while promoting non-African American individuals to such positions;

2

intentionally and deliberately diverting certain sales leads to non-African American employees and cutting off Plaintiffs' and African American salespersons' access to such leads; falsely accusing Plaintiffs of "stealing" sales leads but not accusing non-African American salespersons of doing so; giving Plaintiffs "ghost leads" or fictitious leads while not giving non-African American salespersons such fictitious leads; writing up Plaintiffs and other African American employees for alleged conduct for which it did not write up non-African American employees; requiring one or more Plaintiffs to take drug tests while not requiring non-African American employees to do so; and constantly making discriminatory and racist comments about Plaintiffs and other African American employees and customers.

8.      Defendant further discriminated and retaliated against Plaintiffs by actually and/or constructively discharging them because of their race, racial harassment, and/or their opposition to and complaints about race discrimination.  Defendant further replaced Plaintiffs with non-African American individuals.

9.      During Plaintiffs' employment, Defendant created, allowed, maintained, and failed to remedy a racially hostile work environment that altered the conditions of Plaintiffs' employment and made it more difficult for them to perform their jobs.  Plaintiffs and other African American employees were subjected to repeated racially derogatory slurs and comments and racially offensive jokes, referred to in racially derogatory terms, and subjected to threats, mistreatment, and disparate treatment as compared to their non-African American colleagues by Defendant's Caucasian managerial agents.  For example, Defendant's former Regional Sales Manager at the dealership, Brittany Sparks, who is Caucasian, repeatedly referred to Plaintiffs and other African American employees and customers using racially derogatory terms and slurs and continued to do so after Plaintiffs opposed and complained about her discriminatory

3

comments and conduct.  Ms. Sparks further fired a former African American sales manager, Javon Alexander, because he defended himself when multiple Caucasian customers came onto the car lot and called him the "N-word."  Ms. Sparks and two of Defendant's owners, Matt Nibarger and Scott Snyder, who are Caucasian, "ranted and raved" about and discriminated against African American customers for allegedly being "uneducated" and having "low credit scores" in front of Plaintiffs and other African American employees, further contributing to the racially hostile work environment.  Mr. Nibarger repeatedly referred to African American employees and customers as "gangsters" in front of Plaintiffs and other African American employees.  He stated that he would refuse to sell vehicles to African American customers if their credit scores were less than 600 but did not make such statements about non-African Americans.  Further, Defendant's F&I Manager and Underwriter, Jeffrey Wadding, who is Caucasian, repeatedly stated that he "had to watch black customers because they steal" in front of Plaintiffs and other African American employees.  Additionally, David Hopper, a Caucasian co-worker, repeatedly stated that he was going to wear a "White Lives Matter" shirt to work in front of Plaintiffs and other African American employees.

10.    Defendant further retaliated against Plaintiffs because of their opposition to its racially offensive and unlawful conduct.  Plaintiffs complained to Defendant about its Caucasian agents' and managers' discriminatory comments and conduct.  Defendant took no corrective, remedial, or preventative action in response.  Instead, Defendant's Caucasian agents and managers stated that Plaintiffs needed to "treat people with grace" and subjected Plaintiffs to severe or pervasive retaliatory harassment and issued them unjustified, discriminatory write ups that they did not issue to non-African American employees.  Further, after Plaintiff Bell filed her EEOC charge, Mr. Snyder and another of Defendant's owners, Gary McMahon, who is also

4

Caucasian, yelled at her and Mr. McMahon called her "weird" and "belligerent," among other hostile and offensive terms, causing her to leave their office in tears. Defendant further actually and/or constructively discharged Plaintiffs in retaliation for their protected opposition and reporting activity.

11.    Defendant's alleged reasons for actually and/or constructively discharging Plaintiffs are pretexts for race discrimination, racial harassment, and/or retaliation. Defendant further subjected Plaintiffs to intolerable working conditions in a deliberate effort to force them to leave their employment.

12.    Defendant's conduct as described in this complaint was malicious and/or recklessly indifferent to Plaintiffs' federally protected rights, entitling them to punitive damages under Section 1981.

13.    As a direct result of Defendant's discriminatory and retaliatory conduct, Plaintiffs have lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, and loss of enjoyment of life; and incurred attorneys' fees, costs and litigation expenses.

**Claims for Race Discrimination, Racially Hostile Work Environment, and Retaliation**

14.    Plaintiffs incorporate and reallege the factual averments set forth in paragraphs 1 through 13 herein.

15.    Defendant discriminated against Plaintiffs in the terms, conditions, and privileges of employment and actually and/or constructively discharged them because of their race, racial harassment, and/or in retaliation for their opposition to Defendant's racially offensive and unlawful conduct, including repeated racially derogatory comments, threats, disparate treatment,

5

intolerable working conditions and other mistreatment, in violation of Section 1981 and the THRA.

16.     Defendant created, allowed, maintained, and failed to remedy a racially hostile work environment that altered the conditions of Plaintiffs' employment and made it more difficult for them to perform their jobs, in violation of Section 1981 and the THRA.

17.     Defendant retaliated against Plaintiffs because of their opposition to its racially offensive and illegal discriminatory conduct, in violation of Section 1981 and the THRA.

18.     As a result of its conduct, Defendant is liable to Plaintiffs in an amount to be determined by the jury for the compensatory and other damages Plaintiffs have suffered.

19.     As a result of its malicious and recklessly indifferent conduct as described in this complaint, Defendant is also liable for punitive damages under Section 1981.  It is further liable for Plaintiffs' attorneys' fees and costs under Section 1981 and the THRA.

20.     As a result of its conduct, Defendant is obligated to make Plaintiffs whole for all lost earnings and benefits.

WHEREFORE, premises considered, Plaintiffs request the following relief:

1.     A jury trial and entry of judgment in their favor;

2.     Back pay and damages for lost benefits;

3.     Compensatory damages for embarrassment, humiliation, emotional pain and suffering and mental anguish, stress and anxiety, inconvenience, and loss of enjoyment of life;

4.     Reinstatement or, alternatively, front pay and damages for lost benefits;

5.     Punitive damages;

6.     Attorneys' fees, costs and litigation expenses;

7.     Prejudgment interest and, if applicable, post judgment interest; and

8.     Such other and further legal or equitable relief to which they may be entitled.

Respectfully submitted,

s/Stephen W. Grace
Stephen W. Grace (BPR No. 14867)
1019 16th Avenue, South
Nashville, Tennessee 37212
(615) 255-5225
sgrace@sgracelaw.com

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
5115 Maryland Way
Brentwood, Tennessee 37027
(615) 742-5900
doug@janneylaw.com

Attorneys for Plaintiffs